IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:05-CR-484 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **RODERICK MORRIS,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court are four pre-trial motions filed by Defendant: a motion to dismiss the indictment (Doc. No. 28); a motion to compel the government to disclose 404(b) evidence (Doc. No. 30); a motion for discovery or, alternatively, a bill of particulars (Doc. No. 32); and a motion to suppress identification testimony (Doc. No. 34). The government has filed an omnibus brief opposing these motions (Doc. No. 44), to which Defendant replied (Doc. No.47). Defendant's motion to suppress identification testimony will be granted and the remaining motions will be denied.

**I.     Background**

On December 14, 2005, the grand jury issued a one-count indictment, charging Defendant Roderick Morris with distribution and possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841, "[b]eginning in approximately 2003 and continuing through on or about December 1, 2005." (Doc. No. 47, at 3.) Defendant entered a plea of not guilty on January 23, 2006. (Doc. No. 13.)

Previously, Defendant was tried and acquitted in a Lebanon County, Pennsylvania, court ("state court") of a charge related to an alleged drug deal on March 24, 2005. Following his acquittal, Assistant Attorney General Alice Fisher, through her deputy, John Keeney, granted a

waiver to the Department of Justice's Petite policy,[1] thereby approving Defendant's federal prosecution "because the state prosecution has left a substantial federal interest unvindicated." Id. (citing Doc. No. 19, Defendant's Ex. 2.)  On April 14, 2006, Defendant filed the motions that are the subject of this memorandum.  (Doc. Nos. 28, 30, 32, 34.)

**II.     DISCUSSION**

      **A.     Motion to Dismiss the Indictment**

            1.     Double Jeopardy

Defendant argues that his acquittal in state court should preclude subsequent trial in federal court regarding substantially the same issues.  While Defendant's argument is compelling from a public policy standpoint, his argument that the Fifth Amendment prohibition against double jeopardy prohibits such a trial is not.  As the government's brief correctly notes, established case law makes it clear that Defendant's subsequent federal prosecution does not constitute double jeopardy.

The Fifth Amendment to the United States Constitution provides, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const., amend. V.  The United States Supreme Court has explained that the constitutional guarantee against double jeopardy consists of three separate constitutional protections:  "It protects against a

---

[1] The Petite policy, which derives its name from Petite v. United States, 361 U.S. 529 (1960), "is an internal rule promulgated by the Justice Department that requires federal prosecutors considering a potentially duplicitous [federal-state] prosecution to obtain prior authorization from a Justice official, who decides whether there are 'compelling reasons' for pursuing the matter." United States v. Pungitore, 910 F.2d 1084, 1120 (3d Cir. 1990) (citing Rinaldi v. United States, 434 U.S. 22, 28-29 (1977)).  Defendant notes that "under the present state of the law, the internal Department of Justice procedure for initiating such a prosecution . . . is not enforceable by the District Court and is solely an internal Department of Justice policy." (Doc. No. 29, at 3.)

second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1968).

Notwithstanding the constitutional guarantee against double jeopardy, the Supreme Court has recognized an exception to the guarantee that emanates from our federal system of government.  This exception, commonly referred to as the dual-sovereignty doctrine, allows federal prosecutors to prosecute a defendant on federal charges if there exists a federal interest that was left unvindicated by a prior state prosecution, notwithstanding the fact that a defendant had already been charged and tried in state court.  Abbate v. United States, 359 U.S. 187 (1959); Bartkus v. Illinois, 359 U.S. 121 (1959).  As Defendant notes, judges in the United States Court of Appeals for the Third Circuit have questioned and criticized the dual-sovereignty doctrine, but have recognized that only the Supreme Court can overturn the rule, and the Supreme Court has not yet done so.  See United States v. Wilson, 413 F.3d 382, 394 (3d Cir. 2005) (Aldisert, J., dissenting); United States v. Grimes, 641 F.2d 96, 104 (3d Cir. 1981).

In this case, Defendant objects to the dual-sovereignty doctrine but concedes that the Third Circuit has stated that "the dual sovereignty doctrine [stands] until the Supreme Court [strikes] it down." (Doc. No. 29, at 6.)  Accordingly, Defendant's motion to dismiss the indictment as being in violation of the prohibition on double jeopardy must be denied.

      2.    Vindictive Prosecution

Defendant also argues that the indictment should be dismissed because it constitutes vindictive prosecution, in that federal prosecutors unreasonably "up[ped] the ante" in terms of potential sentencing as compared to the jail time he faced in state court, after Defendant was

acquitted in state court. (Doc. No. 29, at 8.) The government maintains that it enjoys prosecutorial discretion to bring the charge against Defendant and further asserts that the discrepancy between state and federal drug sentencing guidelines, no matter how vast, is insufficient to establish vindictiveness on the part of federal prosecutors.

Defendant relies on North Carolina v. Pearce, 395 U.S. 711, 725 (1969) and Blackledge v. Perry, 417 U.S. 21, 27 (1974) in support of his argument that the government's prosecution of this criminal action is vindictive. Upon review of these decisions, however, the Court can only conclude that neither supports Defendant's argument. Pearce is limited to prohibiting a subsequent vindictive prosecution after a defendant has first been convicted and succeeded in having the conviction set aside through an appeal; Pearce is not applicable in the case of a defendant who has been acquitted. 395 U.S. at 720 n.16. Accordingly, Pearce instructs that the prohibition on vindictive prosecution is designed to prevent a "chilling effect" on appeals that would result from routinely-increased sentences upon re-conviction. Id. at 725 n.20. Blackledge reiterates that the reasoning behind a "vindictive prosecution" rule is to prevent harsher sentences following the appeal of an original conviction. 417 U.S. at 25-28. The Blackledge court was concerned about prosecutors attempting to discourage appeals by pursuing felony indictments in the event that defendants successfully appealed their misdemeanor convictions. Id. at 27-28. However, the prohibition on vindictive prosecution does not operate to preclude bargaining between a prosecutor and defendant during the course of a criminal prosecution. Bordenkircher v. Hayes, 434 U.S. 357, 364-65 (1977).

In the instant case, Defendant is not seeking appeal from conviction; rather, he was acquitted in state court and is not faced with the situation the prohibition on vindictive

prosecution was intended to deter. Moreover, the fact that federal law involves potentially harsher sentences upon conviction than would apply at the state level does not mean that any federal prosecutor's use of her discretion to prosecute Defendant for the crime alleged is vindictive. Defendant seeks to rely upon the "upping the ante" language found in <u>Blackledge</u>, but the context in this case is different. The Court does not perceive the government to be attempting to force Defendant to keep quiet and accept a potentially wrongful lesser charge out of fear of future consequences, as was the case in <u>Blackledge</u>. 417 U.S. at 27-28. Rather, the government's indication that it will seek a life sentence, within the advisory United States Sentencing Guidelines, appears to be either a bargaining tool or adherence to those guidelines. Accordingly, the Court will deny Defendant's motion to dismiss the indictment.[2]

**B.     Motion to Disclose Evidence Under Federal Rule of Evidence 404(b)**

Defendant has moved to compel the government to produce of evidence of other crimes, wrongs, or bad acts that the government plans to present at trial in order to prove Defendant's motive, opportunity, or intent, pursuant to Federal Rule of Evidence 404(b). (Doc. No. 30.) In its brief in opposition, the government provides detail regarding a number of Defendant's prior convictions, analyzing which of those prior bad acts it expects may be presented for the purposes of establishing Defendant's propensity or disposition to commit a crime, as well as those which would not be admissible. (Doc. No. 44, at 3-5.) The government further noted that it would seek to introduce as much of that evidence as it could, and if it learned of any more 404(b) evidence,

---

[2] Defendant also moved in the alternative to limit the government's evidence at trial, prohibiting the government from presenting any evidence that was presented against him in state court, but he does not cite to any precedent for such a remedy. (Doc. No. 29, at 9.) Because the Court has found that the two trials to not implicate the double jeopardy rule and that the instant prosecution is not vindictive, the Court will not order such a limitation.

"such evidence will be disclosed immediately." (Id. at 6.) Accordingly, the Court finds the government's brief in opposition provides sufficient response to Defendant's discovery request and, subject to the government's agreement to provide Defendant with Rule 404(b) evidence if and when it becomes available, Defendant's motion will be denied.

  C.  **Motion for Discovery or a Bill of Particulars**

  Defendant has moved to compel the disclosure of the following information: (1) the time, date, and location of any drug transaction the government expects to prove at trial; (2) the prior criminal record of all witnesses to be used by the government at trial; (3) any promises, threats, or agreements made between the government and their witnesses, or the friends and family of those witnesses; and (4) any potentially exculpatory material that the government may possess. (Doc. No. 32.)

  The government acknowledges its obligation under Fed. R. Crim. P. 16(a) and Brady v. Maryland, 373 U.S. 83 (1963) to provide Defendant all exculpatory material in its possession, and the government further acknowledges that it has a continuing duty to provide such material. (Doc No. 44, at 6.) The government further represents that it "will provide Jencks[3] materials on all witnesses the day prior to the commencement of trial." (Doc. No. 44, at 9.)

  Criminal records of potential witnesses are "beyond the scope of pretrial discovery." United States v. Throckmorton, 2005 U.S. Dist. LEXIS 39993, at *4 (W.D. Pa. Dec. 21, 2005). However, prior criminal records and "deals" made to government witnesses can have significant impeachment value, and as such, the information should be turned over to the defendant at the

---

  [3]The Jencks Act,18 U.S.C. § 3500, governs the defendant's right to inspect statements by government witnesses.

same time as Jencks material has been provided for that witness.  United States v. Bloom, 78 F.R.D. 591, 616-17 (E.D. Pa. 1977); United States v. Leta, 60 F.R.D. 127, 131 (M.D. Pa. 1973).

Where a defendant has requested more discovery information than he is due and the government recognizes its continuing discovery obligations, "courts have generally denied motions to compel disclosure," and instead "rely upon the good faith of the prosecution in its representation that it possesses no exculpatory material," with the threat of sanctions if it is later established that the government has failed to make such disclosures.  Leta, 60 F.R.D. at 129-30.  Defendant has not pointed to any evidence of a lack of good faith or any information within the government's possession that they are improperly withholding.  Accordingly, Defendant's motion for discovery will be denied.

As an alternative to discovery, Defendant requests a bill of particulars.  Federal Rule of Criminal Procedure 7(f) provides as follows:

> The Court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).  The Court has "broad discretion in granting or denying a criminal defendant's motion for a bill of particulars." Throckmorton, 2005 U.S. Dist. LEXIS 39993, at *6 (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989)).  "The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him . . . when the indictment itself is too vague and indefinite for such purposes." United States v. Addonizio, 451, F.2d 49, 63-64 (3d Cir. 1971).  "In ruling on a request for a bill of particulars, the court should consider all information that has been disclosed to the defendant in the course of the prosecution,

whether or not included in the indictment" to determine if the information is clear enough for the defense to be able to conduct its own investigation. Throckmorton, 2005 U.S. Dist. LEXIS 39993, at *6-7 (citing United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985) and United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972)).

In the instant case, though the indictment itself alleges drug transactions within a three-year time frame, the government's response disclosed further information, sufficient for Defendant to conduct his own investigation. The government provided the name of government witness Earl Pyles and the only two specific dates of transactions that it possesses: the March 24, 2004, controlled buy and another July 14, 2005, sale. (Doc. No. 44 at 8.) Defendant is also aware of the anticipated testimony of Eric Leas. (Doc. No. 34 ¶ 3.) Moreover, Defendant has heard in state court and had the opportunity to examine much of the evidence that federal prosecutors will be expecting. Out of the indictment itself, the government's subsequent disclosures, and the Lebanon County proceedings, the Court believes that Defendant is properly informed of the nature of the charges against him and can adequately prepare his defense without the issuance of a bill of particulars. Accordingly, Defendant's motion for discovery or a bill of particulars will be denied.

### D. Motion to Suppress Identification Testimony

Defendant moves to suppress identification testimony by Eric Leas, who was prompted in his identification by a single photograph of the Defendant. (Doc. No. 34 ¶ 3.) Failing an outright suppression of identification testimony, Defendant requests "that a hearing be held on the validity of the photographic and subsequent identifications at issue in this case." (Doc. No. 35, at 2.)

When the method of identification is impermissibly suggestive, that identification should

be suppressed. United States v. Emanuele, 51 F.3d.1123, 1128 (3d Cir. 1995). However, even if an identification was impermissibly suggestive, the witness who made that identification will nevertheless be permitted to identify the defendant in court if his identification can be deemed "reliable." Neil v. Biggers, 409 U.S. 188, 199 (1972); United States v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997). "[R]eliability is the 'linchpin in determining the admissibility of identification testimony.'" United States v. Brownlee, 2006 U.S. App. LEXIS 18047, at *16 (3d Cir. July 18, 2006) (quoting Manson v. Brathwaite, 432 U.S. 98, 106 (1977)). A defendant may request a hearing outside the presence of the jury to determine the reliability of an in-court identification. United States v. Mitchell, 540 F.2d 1163, 1166 (3d Cir. 1976) (citing Biggers, 409 U.S. 188; Simmons v. United States, 390 U.S. 377 (1968); and Stovall v. Denno, 388 U.S. 293 (1967)). "The scheduling of such a hearing rests in the discretion of the trial court, and may at the court's convenience be set for any time before the in-court identification itself." Mitchell, 540 F.2d at 1168.

The government concedes that the single photographic identification procedure used initially was impermissibly suggestive. (Doc. No. 44, at 11.) However, the government maintains that the witness can make a reliable identification in court because of his many alleged interactions with the Defendant, and that in the interest of judicial economy the reliability decision should be conducted during trial. (Id. at 11-12.)

The Court notes the potential prejudice to Defendant if the identification testimony is deemed unreliable after the witness presents an in-court identification in the presence of the jury. Therefore, the Court will conduct a suppression hearing immediately before trial to determine whether an in-court identification is reliable. Accordingly, Defendant's motion to suppress the

photographic evidence and to conduct a hearing regarding an in-court identification will be granted. Counsel are ordered to refrain making referring to the challenged identification pending the Court's ruling on Defendant's motion.

     An appropriate order shall follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | CRIMINAL NO. 1:05-CR-484 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **RODERICK MORRIS,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, this 7th day of September, 2006, for the reasons described in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss the Indictment or, in the Alternative, Limit the Government's Evidence at Trial (Doc. No. 28) is **DENIED**.

2. Defendant's Motion for Disclosure of Rule 404(b) Evidence (Doc. No. 30) is **DENIED**.

3. Defendant's Motion for Discovery (Doc. No. 32) is **DENIED**.

4. Defendant's Motion to Suppress Identification Testimony (Doc. No. 34) is **GRANTED** to the extent that the Court will hold a suppression hearing outside the presence of the jury regarding the reliability of an in-court identification.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania